IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CONNIE TORRES, | § | No. 5:22-CV-01190 |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| CORNERSTONE FITNESS TX, LLC, | § | |
| D/B/A TRU FIT ATHLETIC CLUBS, | § | |
| Defendant. | § | |
| _____ | § | |

ORDER DENYING SUMMARY JUDGMENT

The matter before the Court is Defendant Tru Fit Athletic Club's ("Defendant or "Tru Fit") Motion for Summary Judgment (Dkt. # 25). The Court finds this matter suitable for disposition without a hearing. Upon careful consideration of the arguments and evidence raised by the parties in the motions, the Court—for the reasons that follow—**DENIES** Tru Fit's Motion for Summary Judgment.

BACKGROUND

Plaintiff Connie Torres worked as a club attendant and childcare associate at Tru Fit's Walzem location.  (Dkt. # 24 at 1; Dkt. # 26 at 1.)  Plaintiff worked for Tru Fit until she was terminated by Maribel Gonzalez on December 13, 2019.  (Dkt. # 25 at 1, Ex. 4.)  Plaintiff reported to Supervisor Lucina Arana, and General Manager Maribel Gonzalez.  (Dkt. # 26 at 1, 7:17–19); (Dkt. #26 at 2, 11:20–24.)  Yanet Gomez worked as Operations Manager for Tru Fit during Torres's employment.  (Dkt. # 26 at 2, Ex. 5.)  Ms. Arana, Ms. Gonzalez, and Ms. Gomez were all in attendance during Torres's termination meeting.  (Dkt. # 26 at 2, Ex. A at 17:10–25.)

Due to her epilepsy, Plaintiff frequently missed work and at times did not notify her supervisors.  (Dkt. # 25, Ex. 8)   Plaintiff would send doctor's notes via text to Gomez regarding her epilepsy treatment.  (Id.)

According to Tru Fit's "Employee Exit Checklist," Tru Fit terminated Plaintiff because "health comes first" and "unreliability on her behalf."  (Dkt. # 25, Ex. 2.)  Torres contends she was discriminated against based on her disability.  (Dkt. # 26 at 1.)

On November 1, 2022, Plaintiff filed suit against Tru Fit, alleging claims of disability discrimination and retaliation under the Americans with

Disabilities Act ("ADA") and the Texas Commission on Human Rights Act ("TCHRA"). (Dkt. # 1 at 1.)  On March 14, 2023, the Court denied Defendant's motion to dismiss Plaintiff's ADA claims. (Dkt. # 18.)  On April 6, 2023, Torres filed an Amended Complaint. (Dkt. # 19.)  On May 9, 2023, this time, the Court dismissed Torres' claims without prejudice with opportunity to amend a second time, because she removed key allegations from her Complaint. (Dkt. # 21.)  On May 9, 2023, Torres filed her Second Amended Complaint. (Dkt. # 22.)  On June 5, 2023, Tru Fit filed an Answer. (Dkt. # 23.)

On October 2, 2023, Tru Fit filed a Motion for Summary Judgement on all of Torres's claims. (Dkt. # 25.)  Torres filed a response on October 13, 2023. (Dkt. # 26.)  Tru Fit filed a Reply in Support of its Motion for Summary Judgment on October 20, 2023. (Dkt. # 27.)

<u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 permits any party to a civil action to move for summary judgment upon a claim that there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. FED. R. CIV. P. 56.  A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 324-25 (1986).

The movant need only show the absence of evidence to support a claim on issues to which the nonmovant bears the ultimate burden of proof at trial. (Id. at 323–25.)  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. (Id. at 324–25.) The non-moving party must set forth specific facts showing the existence of a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).

DISCUSSION

Tru Fit moves for summary judgment, arguing that: (1) Torres has failed to establish a prima facie case of disability discrimination and alternatively, (2) Torres' claims for back pay and front pay should be dismissed on summary judgment.  (Dkt. # 25.)

I.     ADA and TCHRA claims[1]

In order to bring an ADA claim, an employee to first establish a prima facie case that (1) she is disabled within the meaning of the ADA, (2) she was qualified for the job, and (3) she was fired on account of her disability.  Gosby v. Apache Indus. Services, Inc., 30 F.4th 523, 525 (5th Cir. 2022) (citing McDonnell

---

[1]TCHRA mirrors the language of the ADA, so Texas courts follow ADA law in evaluating TCHRA discrimination claims. Williams v. Tarrant Cnty. Coll. Dist., 717 Fed. Appx. 440, 445 (5th Cir. 2018).

<u>Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  Once a prima facie case is established, the employer has the burden of articulating a legitimate, non-discriminatory reason for the firing.  <u>Id.</u> at 526.  "If the employer does so, the burden returns to the plaintiff 'to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual.'"  <u>Id.</u> (quoting <u>Cannon v. Jacobs Field Servs. N.A., Inc.</u>, 813 F.3d 586, 590 (5th Cir. 2016).

A. <u>Disability</u>

First, Tru Fit contends that Plaintiff is not disabled under the ADA. (Dkt. # 25 at 3.)  In meeting the threshold requirement, the ADA defines disability as (A) "physical or mental impairment that substantially limits one or more of the major life activities of such individual (B) a record of such impairment; *or* (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2) (emphasis added).

Plaintiff argues that she has a physical impairment that substantially limits major life activities. Alternatively, Plaintiff says she is "regarded as" having such impairment.  (Dkt. # 26 at 5–6.)

In the instant case, Plaintiff has testified that she suffers from "partial, focal seizures" on the side of her body "lasting no longer than four or five minutes," followed by a headache. (Dkt. # 25, Ex 7 at 27:24–28:7.)  During these seizures, Plaintiff describes "being out of it" in terms of awareness of her

surroundings.  (<u>Id.</u> at 38:7–21.)  Using the EEOC as a guide, Plaintiff's epilepsy is an impairment under the ADA as it is a physiological disorder that affects one or more of her body systems.  <u>See</u> 29 C.F.R. § 1630.2(h)(1) & (2).

Mere evidence of a physical impairment is insufficient to succeed under the ADA as Plaintiff must also show that her impairment substantially limits a major life activity. 42 U.S.C. § 12102(2); <u>Dutcher v. Ingalls Shipbuilding,</u> 53 F.3d 723, 726 (5th Cir. 1995).  The EEOC has listed walking, seeing, caring for oneself, performing manual tasks, hearing, speaking, breathing, and working as major life activities.  29 C.F.R. § 1630.2(I).  "Whether an impairment substantially limits a major life activity is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact.  29 C.F.R. § 1630.2(j).

The Fifth Circuit has observed that "relapsing-remitting conditions like . . . epilepsy . . . can constitute ADA disabilities depending on the nature of each individual case."  <u>EEOC v. Chevron Phillips Chem. Co., LP,</u> 570 F.3d 606, 618 (5th Cir. 2009).  The Fifth Circuit has declined "to accept the broad position that every temporary loss of "awareness," no matter how brief, necessarily constitutes a substantial limitation of the major life activities of seeing, hearing, and speaking."  <u>Deas,</u> 152 F.3d at 479.

Plaintiff testified that "driving, roller coasters, sky diving," and "being up high" were life activities that epilepsy limits her from engaging in.  (Dkt. # 25 Ex. 7, 184:2–16.)  The Fifth Circuit has declined to hold that driving is a major life activity.  Wilson v. Capital Transp. Corp., 234 F.3d 29 (5th Cir. 2000)  And sky diving, riding rollercoasters, and being up high are not "activities that are of central importance to daily life, and activities that are central to the life process itself." Waldrip v. Gen. Elec. Co., 325 F.3d 652, 654 (5th Cir. 2003)

However, during these seizures, her ability to care for herself, perform manual tasks, walk, and learn are impaired.  Additionally, Plaintiff's frequent absences and hospitalization due to epilepsy show that her seizures can be severe, are disruptive to her life, and have significant impacts.  (See Dkt. # 26, Ex. 8.) Therefore, she has established at least a genuine issue of material fact as to whether her epilepsy substantially impairs her major life activities.

Alternatively, an individual is considered disabled under the ADA if she has "an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  41 U.S.C. § 12102(3)(A).  The "regarded as" provision "reflects the view that 'unfounded concerns, mistaken beliefs, fears, myths, or prejudice about disabilities are just as disabling as actual impairments.'"  Cannon v. Jacobs Field Services N. Am., Inc., 813 F.3d 586, 591 (5th Cir. 2016) (quoting 29 C.F.R. Pt. 1630, App. § 1630.2(1)).

The employee does not need to show that the employer regarded him or her as being substantially limited in a major life activity and does not need to show to what degree his employer believed the impairment affected him.  Mendoza v. City of Palacios, 962 F. Supp. 2d 868, 870 (S.D. Tex. 2013)

Tru Fit argues that Plaintiff admits she never told anyone she was "disabled." However, Plaintiff told Gomez that she suffered from epilepsy.  (Dkt. # 26, Ex. B at 12:19–22). Additionally, Plaintiff is not required to show to what degree the employer believed the impairment affected Plaintiff, just that she suffers from an impairment.  Id.; see also 29 C.F.R. § 1630.1(c)(4) (stating that the definition of 'disability' shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA).

Plaintiff also sent multiple doctors' notes, some over text to Gomez, that she would be absent due to her epilepsy.  (Dkt. # 25, Ex. 8.)  However, Gonzalez, who made the ultimate decision to terminate Plaintiff in consultation with Gomez, testified that she did not know that Plaintiff had epilepsy.  (Dkt. # 26, Ex. A at 14:18-20, 41:12–13.)  Though Plaintiff states that both Gomez and Gonzalez knew she was hospitalized to treat epilepsy, both Gomez and Gonalez only testified that they knew she was hospitalized but did not know it was for epilepsy.  (Id. at 12:14-17, Dkt. # 26, Ex. B at 14:6-10)  Gomez testified that she thought she was hospitalized for "women problems."  (Dkt.# 26, Ex. B, 14:6.)

However, in a letter to the EEOC prepared by Tru Fit's counsel, counsel states that "on or around November 12, 2019, Complainant informed Yanet Gomez that Complainant had been hospitalized due to her medical condition, epilepsy." (Dkt. # 26, Ex. C at 2.)  In sum, at least one of Torres' supervisors was aware that Plaintiff suffered from epilepsy, and there is a genuine issue of material fact as to whether the other supervisors knew of her epilepsy.  Therefore, a reasonable jury could find that Plaintiff was regarded disabled under the ADA.  Therefore, the Court will not grant summary judgment on this issue.

## B. Qualified Individual under the ADA

Defendant argues that, even if Plaintiff has a disability under the ADA, it is entitled to summary judgment on the basis that Torres is not considered a qualified individual under the ADA.  (Dkt. # 25 at 10.)  A qualified individual is one "who, with or without reasonable accommodation, can perform the essential functions" of their position.  42 U.S.C. § 12111(8)  This requires a showing that either (1) she could "perform the essential functions of the job in spite of [her] disability" or, if she could not, (2) that a "reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job." Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1093 (5th Cir. 1996).

Tru Fit contends that Plaintiff cannot show that she is a qualified individual due to her absenteeism.  (Dkt. # 25 at 10.)  The implementing

regulations define "essential functions" as "the fundamental job duties of the employment position the individual with the disability holds or desires." 29 C.F.R. § 1630.2(n)(1). "To determine whether a function is essential, we look to several factors, such as the 'employer's judgment as to which functions are essential' and 'the consequences of not requiring the incumbent to perform the function.'" Weber v. BNSF Ry. Co., 989 F.3d 320, 325 (5th Cir. 2021) (quoting 29 C.F.R. § 1630.2(n)(3)(i)–(vii)). Further, ADA regulations require giving the greatest weight to the employer's judgment. Id.

Where attendance is an essential aspect of the job, an individual who has frequent absences is unqualified. Harville v. Texas A & M University, 833 F.Supp.2d 661 (S.D. Tex. 2011). Tru Fit's policies assert that, "poor attendance and tardiness are disruptive and will not be tolerated. Either may lead to disciplinary action up to including termination." *Dkt. # 26, Ex. 3 at 8.)

Plaintiff alleges that, because Ms. Gonzalez admitted Plaintiff was able to perform her job duties of her position and that Ms. Gonzalez did not have any concerns of Plaintiff's medical condition interfering with her performance that Plaintiff was a qualified individual under the ADA. (Dkt. # 26 at 8.) However, the issue is not whether Plaintiff could perform her job duties when she was present, but whether she was able to perform the essential function of reporting to work regularly.

While Plaintiff missed multiple days of work, without notice to Tru Fit at times, there is at least a fact issue as to whether this rose to the level of "excessive absenteeism." Plaintiff's absenteeism is distinguishable from other cases where the court found that a plaintiff was unqualified due to absences from work for months at a time. <u>Rogers v. Int'l Marine Terminals</u>, 87 F.3d 755, 759 (5th Cir. 1996) (finding that the plaintiff was unqualified when he would be unavailable from work for a year); <u>Cortez v. Raytheon Co.</u>, 663 F. Supp. 2d 514 (N.D. Tex. 2009) (finding that plaintiff was unqualified when, at the time of plaintiff's discharge, plaintiff could not work at all). Plaintiff was hospitalized on November 12, 2019 for her epilepsy, and the doctor provided her with a return to work date of December 10, 2019.   (<u>See</u> Dkt. # 25, Ex. 8 at 4.) According to Plaintiff's doctor's notes and text messages with Gomez, she also missed at least 14 days of work between August 2019 and her hospitalization in November due to her epilepsy. Though there are admittedly many absences, these absences do not automatically rise to the level of absences where the court has found that the plaintiff was unqualified as a matter of law.

Ultimately, taking the evidence in the light most favorable to Plaintiff, there remains a genuine issue of material fact as to whether Plaintiff is qualified, as a reasonable jury could find that her absences do not raise to level of "excessive."

C. <u>Causal connection between disability and adverse employment action</u>

Lastly, Plaintiff must show that there is a causal connection between an adverse employment action and her disability. <u>Rodriguez v. Eli Lilly & Co.</u>, 820 F.3d 759, 765 (5th Cir. 2016). Defendant argues that Plaintiff cannot show there is a causal connection, because Plaintiff failed to show that Tru Fit knew about her disability. As noted previously, there is at least genuine issue of material fact as to whether Tru Fit was aware of her condition, as the evidence shows that at least Gomez knew of her epilepsy. Additionally, when Plaintiff was terminated, Tru Fit articulated that she could re-apply when she was "healthier." (Dkt. # 26, Ex. C at 7:15–7:41.) This is enough to show, at the summary judgment stage, that there is at least a genuine issue of material fact as to whether the termination and her perceived disability, epilepsy, are causally related.

D. <u>Whether nondiscriminatory reason was pre-text</u>

Plaintiff does not argue that Tru Fit failed to articulate a non-discriminatory reason for Plaintiff's termination, her excessive absences, but instead focuses its argument on the fact that its reasons were "mere pretext" to discriminate against Plaintiff for her epilepsy condition. (Dkt. # 26 at 10.) Once an employer articulates a legitimate nondiscriminatory reason, the plaintiff must rebut the reason by establishing, through either through evidence of disparate treatment or by showing the employer's proffered explanation is false or unworthy

of credence, that the reason was mere pretext.  Laxton v. Gap Inc., 333 F.3d 572, 577–78 (5th Cir. 2003).

Defendant's reason for terminating Plaintiff was Plaintiff's "chronic absenteeism."  (Dkt. # 25 at 13.)  Plaintiff argues that this reason is mere pretext because Defendant failed to communicate with Plaintiff to determine if she was even capable of appearing for work while she was absent, and that Tru Fit's "ignorance of Plaintiff's current status at the time of her termination…could lead a reasonable jury to conclude that Defendant's termination decision was motivated by discriminatory animus as Defendant…treated her incapacity as a foregone conclusion and terminated Plaintiff on those grounds."  (Dkt. # 16 at 12.)

According to Plaintiff's doctor's notes and texts, Defendant missed at least a month and fourteen days of work due to her epilepsy from the end of August 2019 to December 2019.  (Dkt. # 25, Ex. 8.)  Gonzalez stated that Plaintiff was being fired because of her excessive absences, and that she could re-apply when she is "healthier."  (Dkt. # 25, Ex. 4 at 1, Dkt. # 26, Ex. A at 37:18–21.)

Ultimately, Plaintiff presents at least a genuine issue of material fact as to whether this reason was pre-textual.  After all, all of Plaintiff's absences appear to be due to her epilepsy, as supported by the doctor's notes.  Therefore, Tru Fit would not just be terminating her for her absences, but for her absences related to her epilepsy.  For this reason, a reasonable jury could find that Tru Fit's

true reason for discharging Plaintiff was her epilepsy. Therefore, the Court will deny summary judgment at this stage.  Cf. Cortez v. Raytheon Co., 663 F. Supp. 2d 514 (N.D. Tex. 2009) (finding that plaintiff failed to offer evidence of pretext when plaintiff did *not* provide supporting medical documentation).

E. Back Pay

Lastly, Defendant argues that it is entitled to summary judgment on damages because Plaintiff admitted that she failed to seek employment after Tru Fit fired Plaintiff until Plaintiff secured employment with Victoria's Secret in January 2021.  (Dkt. # 25 at 14.) (citing Dkt. # 25, Ex. 7 at 43:15–45:23).

"A plaintiff suing for back pay under the ADA has a duty to mitigate his damages by using reasonable diligence to obtain substantially equivalent employment." U.S. E.E.O.C. v. IESI Louisiana Corp., 720 F. Supp. 2d 750, 754 (W.D. La. 2010)  (citing Migis v. Pearle Vision, In*c.,* 135 F.3d 1041, 1045 (5th Cir.1998)). Whether an injured person has mitigated his damages requires a factual assessment of the reasonableness of his conduct." Hill v. City of Pontotoc, 993 F.2d 422, 427 (5th Cir. 1993).  Importantly, the "employer has the burden of proving failure to mitigate."  (Id., quoting Palasota v. Haggar Clothing, Co., 499 F.3d 474, 486 (5th Cir. 2007)).

"An employer must show 'not only that the plaintiff failed to exercise reasonable diligence, but that there were jobs available which plaintiff could have

discovered and for which [he] was qualified.'" <u>Equal Employment Opportunity Comm'n v. Modern Group, Ltd.</u>, No. 1:21-CV-451, 2024 WL 1288634, at *41 (E.D. Tex. Mar. 25, 2024) (quoting <u>Hill v. City of Pontotoc</u>, 993 F.2d 422, 427 (5th Cir. 1993)).

Defendant argues that the Court should foreclose Plaintiff's ability to recover back pay, essentially asking the Court to find that its failure to mitigate defense is conclusively established as a matter of law.  Defendant points to Plaintiff's deposition, alleging that Plaintiff stated that she admitted she "made the voluntary choice not to immediately seek employment…until Plaintiff secured employment with Victoria's Secret in January 2021." (Dkt. # 25 at 14.)  However, her statements in her deposition are not so clear.  Instead, she first agreed with Defendant's counsel statement that she was "so emotionally damaged by being fired from this job that [she] couldn't even go look for a job," but she never specified when she resumed looking for a job.  (Dkt. # 25, Ex. 7, 43:15–25.) Shortly after, defense counsel asked, "But you decided not to look for a job; is that right?"  (<u>Id.</u>, at 45:10-11.)  Plaintiff responded, "No."  (<u>Id.</u> at 45:12.)  Later, she then stated that she gave up on everything, including looking for another job, because she was depressed.  (<u>Id.</u>, 45:10–23.)  Ultimately, this conversation contains inconsistencies and is unclear as to when Plaintiff began looking for a job, as she eventually resumed her search to receive a job at Victoria's Secret.  For this

reason, there is a genuine issue of material fact as to whether Plaintiff is entitled to back pay, and the Court will decline to preclude back pay damages at summary judgment.

      F.  <u>Front Pay</u>

      Defendant also asks the Court to rule that Plaintiff is not entitled to front pay.  (Dkt. # 25 at 15.)  This is because plaintiff earns more in hew new job, so a front pay award would "award her a windfall."  (<u>Id.</u>) (citing <u>Wilder v. Stephen F. Austin State Univ.</u>, 552 F. Supp. 3d 639, 663 (E.D. Tex. 2021)).

      While it is true that Plaintiff testified that she now makes more at Victoria's Secret, this was only true as of the date of the deposition.  (Dkt. # 25, Ex. 7 at 40:1–5, 134:23–25, 135:1.) "[F]ront pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement."  <u>Pollard v. E.I. du Pont de Nemours & Co.</u>, 532 U.S. 843, 846 (2001). "[F]ront pay is a prospective remedy that estimates the damage plaintiff will continue to suffer after the date of final judgment as a result of the wrongdoing."  <u>Palasota v. Haggar Clothing Co.</u>, 499 F.3d 474, 490–91 (5th Cir. 2007).  Therefore, while as of the date of the deposition Plaintiff had a higher paying job, this may not be true as of the date of the judgment.  Therefore, the Court will not preclude Plaintiff's ability to recover front pay damages at this stage.  It is simply too early to make a ruling on this issue.

CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for

Summary Judgment.

**DATED**: San Antonio, Texas, August 9, 2024.

_____
David Alan Ezra
Senior United States District Judge